FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ AUG 07 2006 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 05-CV-570 (JBW) |
| v. | |
| SPEED JOYEROS, S.A., ARGENTO VIVO, S.A., YARDENA HEBRONI, also known as "Yardena Hevroni," ELIAHU MIZRAHI, | MEMORANDUM, ORDER & JUDGMENT |
| Defendants; | |
| MIRIAM ROBINSON, et al., Petitioners. | |

Appearances:

For the United States of America:

> Patrick T. Murphy
> Asset Forfeiture/Money Laundering Section
> United States Department of Justice
> 1400 New York Avenue
> Washington, DC 20005

For Petitioners:

> Cochez Pages Martinez
> Vallarino Building
> Sixth Floor
> Elvira Méndez Street
> Panama City
> Republic of Panama
> By: Guillermo A. Cochez

1

JACK B. WEINSTEIN, Senior District Judge:

The United States moves to strike the claims of petitioners to assets in the Republic of Panama forfeited pursuant to a plea agreement between defendants and the United States. The motion to strike is granted.

I.   **Facts**

Yardena Hebroni and Eliahu Mizrahi, along with their Panamanian jewelry companies Speed Joyeros, S.A. and Argento Vivo, S.A. were indicted in this district on September 15, 2000 on money laundering and conspiracy charges. In response to this indictment, Panamanian officials closed the corporate defendants three days later. They seized the assets and books of the defendants on behalf of the United States. Corporate funds are still being held in a Panamanian bank in the name of the Republic of Panama on behalf of the United States.

On September 28, 2001 petitioners filed a complaint with the Republic of Panama's Ministry of Labor and Labor Development ("Labor Ministry"), seeking wages and vacation pay owed them by the corporate defendants, together with court costs and interest. *See* Ruling No. 02-2002, Republic of Panama, Ministry of Labor and Labor Development (January 21, 2002), at 4 (in translation) ("Labor Min. Dec.") (Docket No. 14, Ex. D). On January 21, 2002 the Ministry ruled that the employees were entitled to the sums claimed. *Id.*

Hebroni pled guilty on March 20, 2002 and was sentenced on April 3, 2002. *See U.S. v. Speed Joyeros*, 204 F. Supp. 2d 412 (E.D.N.Y. 2002). As part of her plea agreement, Hebroni agreed to forfeit all the assets belonging to corporate defendants Speed Joyeros, S.A. and Argento Vivo, S.A. to the United States.

On May 27, 2004 petitioners filed suit in the First Labor Court of the Second Section of Colon, Republic of Panama ("Labor Court"), to execute the judgment rendered by the Labor Ministry. On July 14, 2004 the Labor Court "decree[d] formal attachment" of particular bank accounts in the corporate defendants' names in favor of petitioners. Ruling No. 255, First Labor Court of the Second Section of Colon (July 14, 2004), at 5 (in translation) ("Labor Court Dec.") (Docket No. 14, Ex. E).

On October 28, 2004 this court ordered the forfeiture of all assets seized by the Panamanian government from the corporate defendants' Panamanian locations in connection with the criminal proceedings in this district.

A number of Italian companies then filed claims to the inventory of the Herboni stores. The companies had supplied gold jewelry that constituted a main asset of the defendants, but they had never been paid. On May 27, 2005 most of these claims were dismissed pursuant to a stipulation of the parties. The remaining Italian claims were dismissed on June 27, 2005 on a government motion for a default judgment. The problem with the claims was that the jewelry had been sold outright, not on consignment. This meant that the suppliers were general creditors, not title holders. Since the gold they sought had already been forfeited to the United States, which then held title, the general creditors' claims had to be rejected in the forfeiture proceeding.

Notice of the forfeiture was published in the Republic of Panama until July 16, 2005. On July 21, 2005 petitioners—former employees of the defendants who had lost their jobs when the corporate defendants were closed—submitted a letter to the United States, asserting claims to the seized assets for unpaid wages, vacation pay, court costs and interest. The claims identified a sum due the entire group of petitioners, rather than each individual, and were not verified as

3

required by the criminal forfeiture statute.

On November 1, 2005 this court directed petitioners, through counsel based in Panama, to submit properly verified claims. Subsequently, counsel submitted individual, itemized claims for all 33 petitioners, verified by a licensed public accountant; a legal brief in support of petitioners' claims; and a power of attorney form executed by all petitioners in favor of counsel. The government has moved to strike the claims on procedural and substantive grounds.

## II. Law and Application of Law to Facts

### A. Facial Sufficiency of Claims

Defendant Hebroni pled guilty to one count of money laundering conspiracy, a violation of Section 1956(h) of Title 18 of the United States Code. Section 982 of Title 18 provides for mandatory forfeiture of property involved in money laundering offenses. It states:

> (a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.
> . . .
> (b)(1) The forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853).

18 U.S.C. § 982.

Section 853(n) of Title 21 describes the procedures by which a third party may assert an interest in property forfeited as a result of a money laundering conviction. It provides:

4

> (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.
>
> (3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

21 U.S.C. § 853(n). The government contends that petitioners have failed to comply with statutory requirements.

Petitioners comply with subsection (2). They were not defendants in the money laundering prosecution. There is no evidence that they were involved in any way in the conspiracy. They were innocent employees of what appeared to be legitimate jewelry businesses. The claims were timely filed.

Petitioners have not complied with subsection (3). Counsel for petitioners has filed an itemized claim for each of the 33 petitioners, along with a power of attorney signed by all petitioners and notarized. The claims themselves are verified not by the petitioners, however, but by a certified public accountant. The statute requires that each claim asserting an interest in forfeited property "be signed *by the petitioner* under penalty of perjury." § 853(n)(3), *supra* (emphasis supplied). This is no mere formality. "[T]here is a substantial danger of false claims in forfeiture proceedings . . . ." *Mercado v. U.S. Customs Service*, 873 F.2d 641, 645 (2d Cir. 1989). Requiring the claimant to sign personally under penalty of perjury serves the

government's legitimate interest in protecting forfeited assets. "Strict compliance" with claim filing procedures is "typically required," though "a court has discretion in appropriate circumstances to depart from the strict compliance standard." *U.S. v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (discussing application of Supplemental Rule for Certain Admiralty and Maritime Claims C(6)). The court would permit the petitioners to now satisfy this procedural requirement were it not for the fact that their claims must fail on the merits.

### B. Merits of Claims

Section 853(n)(6) establishes the substantive requirements a petitioner must satisfy to successfully state a claim against forfeited property. It reads:

> (6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6). There is no contention that petitioners are bona fide purchasers for value under paragraph (B). Their claims depend on their ability to establish that, under paragraph (A), they have a cognizable "legal right, title, or interest in the property" forfeited by the criminal

defendants. *Id.*

The parties have stipulated that Panamanian law is to be used to determine the petitioners' rights to the assets held in the Panamanian bank accounts. This result under applicable federal conflicts of law principles is consistent with the general federal practice in forfeiture matters of referring to the law of the jurisdiction that created the property right to determine the petitioner's legal interest. *See, e.g., U.S. v. Lester*, 85 F.3d 1409, 1412 (9th Cir. 1996) ("In drug forfeiture actions, ownership of property is determined by state law."); *U.S. v. BCCI Holdings*, 961 F. Supp. 287, 293 (D.D.C. 1997) ("[T]he existence and nature of [petitioner's] legal interest in the property is determined by reference to state law . . . ."). The *effect* of that property interest—i.e., whether it satisfies the requirements of the federal forfeiture statute—is necessarily a matter of federal law. *See, e.g., U.S. v. Lester*, 85 F.3d at 1412 ("Once the ownership interests are defined under state law . . . the federal forfeiture statutes determine whether those property interests must be forfeited to the Government.").

The Republic of Panama's Labor Ministry and Labor Court have already expounded and applied the Panamanian law relevant to petitioner's claims. *See* Gov't Br. 5. On January 21, 2002, the Labor Ministry ruled that the petitioner employees were entitled to the sums they now seek. *See* Labor Min. Dec. 7 (ordering defendants to pay petitioners wages and vacation pay owed, along with court costs and interest). The petitioners perfected an order of attachment in the Labor Court on July 14, 2004. *See* Labor Court Dec. 5 (decreeing formal attachment of identified bank accounts held in the Republic of Panama). As a matter of comity, this court accepts those decisions as definitive of petitioners' rights to the assets seized under Panamanian law.

## III. Application of Law to Facts

Under binding precedent from the Court of Appeals for the Second Circuit, the petitioners' legal interest in the seized assets is insufficient to permit a modification of the forfeiture order. Section 853(n) requires petitioners to demonstrate "a legal right, title, or interest in the property" seized. 21 U.S.C. § 853(n)(6)(A). The Court of Appeals has construed this subsection as requiring "an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account." *U.S. v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997). General, unsecured creditors lack a particularized interest in specific assets. "[A]lthough general creditors can claim an interest in their debtors' estates, they cannot claim an interest in any particular asset that makes up that estate." *Id.* (citation omitted). A general or unsecured creditor is one "who, upon giving credit, takes no rights against specific property of the debtor." *Black's Law Dictionary* 376 (7th ed. 1999). Employees owed wages are unsecured creditors. *See* 11 U.S.C. § 507(a)(4) (identifying "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" as "unsecured claims" under the bankruptcy code); 12 C.F.R. § 360.3(a)(3) (same under Federal Deposit Insurance Corporation regulations).

Petitioners have perfected a Panamanian order of attachment in particular bank accounts previously belonging to the corporate defendants. Even if this order were construed as a particularized interest in these assets, it comes too late in the day. Under Section 853(n)(6), the petitioners' legal interest is to be determined as of "the time of the commission of the acts which gave rise to the forfeiture of the property . . . ." 21 U.S.C. § 853(n)(6)(A). Defendants' conspiracy began sometime in the late 1990s. The latest possible point determining petitioners' interests would be the date of Hebroni's indictment, September 15, 2000. The Panamanian

Labor Court did not issue its order of attachment until July 2004. Under *Ribadeneira*, it is impossible for any employee of a person whose assets are subject to criminal forfeiture to recover owed wages and benefits through the statutory claims procedure of Section 853, since the employee would have to perfect an order of attachment *before* the employer began his criminal conduct.

The government does not have to prove that the funds were in the forfeited Panamanian bank accounts at the time the criminal acts were committed. Section 853(d) of the forfeiture statute states:

> There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II of this chapter is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—
>
> (1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II of this chapter or within a reasonable time after such period; and
>
> (2) there was no likely source for such property other than the violation of this subchapter or subchapter II of this chapter.

21 U.S.C. § 853(d). Hebroni's plea agreement and the time of closing the business make it clear that the funds were actually or constructively held by the Republic of Panama for the United States when Hebroni and her corporations were indicted—some time before any specific lien of petitioners could have been effective.

This result is regrettable. Under American and Panamanian law workers are entitled to heightened protections in the event of the liquidation of their employer. *See* 11 U.S.C. § 507(a) (in American bankruptcy code, higher priority accorded to claims of employees for wages and

other compensation owed than to most other unsecured claims); Panama Labor Code, Art. 166 ("In the event of bankruptcy or insolvency, wages, benefits and compensation owed to the workers shall have priority over all other creditors." (in translation)). The admonition to protect one's workers is an ancient one. *See* Deuteronomy 24:14 (New International Version) ("Do not take advantage of a hired man who is poor and needy .... Pay him his wages each day before sunset, because he is poor and is counting on it."). Compassion and morality do not provide a basis for relief from a specific statute construed by the Court of Appeals.

## IV. Conclusion

The petitioners are general, unsecured creditors even if, under Panamanian law, they stand at the head of the line of creditors. They have no special interest in the particular assets seized, and so have not met the requirements of the criminal forfeiture statute as construed by the Court of Appeals. The government's motion to strike the petitioners' claims is granted.

SO ORDERED.

Jack B. Weinstein

Dated: January 27, 2006
Brooklyn, New York

10